453 So.2d 1116 (1984)
GOVERNMENT EMPLOYEES INSURANCE COMPANY, Petitioner,
v.
Daniel M. NOVAK, As Personal Representative of the Estate of Beverly Ann Novak, Respondent.
No. 63207.
Supreme Court of Florida.
July 12, 1984.
*1117 Clark J. Cochran, Jr., of Hainline, Billing, Cochran & Heath, Fort Lauderdale, for petitioner.
M. Daniel Hughes of Chappell and Brandt, Fort Lauderdale, for respondent.
BOYD, Chief Justice.
This cause is before the Court on petition for review of a decision of the District Court of Appeal, Fourth District. The decision of which review is sought is reported as Novak v. Government Employees Insurance Co., 424 So.2d 178 (Fla. 4th DCA 1983). The jurisdictional ground of the petition for review is conflict of decisions. See Art. V, § 3(b)(3), Fla. Const. The decision relied upon as being in direct and express conflict with the decision below is Reynolds v. Allstate Insurance Co., 400 So.2d 496 (Fla. 5th DCA 1981). We have jurisdiction and approve the decision of the district court.
Beverly Ann Novak was in her car and about to drive away from her residence when she was approached by Robert Endicott, a stranger to her. Endicott asked her for a ride. She refused. Then Endicott shot her in the face, pulled her from the car, got in, and drove away. The police apprehended Endicott soon afterwards, but in the resulting criminal proceedings his actions were legally determined not to have been crimes because of a mental disturbance precluding a finding that his acts were intentional. That is, he was determined to be not guilty by reason of insanity.
Several months later, Beverly Ann Novak died as a result of the gunshot wound she sustained. Daniel Novak, father of the deceased and personal representative of her estate, sought payment from petitioner Government Employees Insurance Company of personal injury protection benefits under the insurance policy covering the automobile his daughter had been driving. The insurer denied coverage and the present action was brought on behalf of the estate. The trial court granted summary judgment for the insurer on the ground that the injuries to the deceased did not arise out of the ownership, maintenance, or use of the insured motor vehicle.
The district court of appeal reversed, finding a sufficient connection between the automobile and the injury. The district court reasoned as follows:
[T]he shooting in this case was motivated by and a direct result of the assailant's request to ride in the vehicle and the victim's refusal. Endicott's attempted use of the vehicle and the driver's refusal prompted the conduct that caused the injury. It must be remembered that we are not looking for a proximate causal relationship in the resolution of this case; rather the inquiry should be whether the attack upon the decedent arose out of, or *1118 flowed from, the use of the vehicle. The answer seems rather clear to us that the decedent's refusal to allow Endicott to ride in the car, which she was operating, demonstrates a sufficient nexus to meet the requirements of the rule requiring a causal relationship. Therefore, we hold that PIP coverage was available for the accident in question.
424 So.2d at 180.
Petitioner argues that the district court erred. The risk of injury from an intentional criminal attack by another person is not, petitioner argues, among the dangers personal injury protection insurance is intended to cover. Petitioner relies on numerous cases where the automobile was found to be merely the situs of acts or incidents arising from completely independent causes. We find those cases to be inapposite and unpersuasive. The extent of the coverage is governed by the policy language and the statute regulating such policies.
Section 627.736(1), Florida Statutes (1981), requires that automobile insurance policies provide personal injury protection benefits for any "loss sustained ... as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle," and goes on to specify the required benefits. Pursuant to the requirements of the statute, the policy in this case provided coverage for any "accident ... arising out of the ownership, maintenance, or use of a motor vehicle." The instant case thus raises two questions of definition and construction, which are: (1) the meaning of the term "accident" and (2) the meaning of the clause "arising out of the ownership, maintenance, or use of a motor vehicle."
The word "accident" has been defined as "an event or condition occurring by chance or arising from unknown or remote causes ... an unforeseen, unplanned event or condition ... a sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." Webster's Third New International Dictionary 11 (1966).
The word "accident" is further defined as "a fortuitous circumstance, event, or happening ... an unusual, fortuitous, unexpected, unforeseen, or unlooked for event, happening, or occurrence ... something unforeseen, unexpected, unusual, extraordinary or phenominal, taking place not according to the usual course of things or events ... any unexpected personal injury resulting from any unlooked for mishap or occurrence." Black's Law Dictionary 30 (rev. 4th ed. 1968). More significantly, Black's Law Dictionary provides a further special definition of the word as used in accident insurance policies. "An accident within accident insurance policies is an event happening without any human agency, or if happening through such agency, an event which, under [the] circumstances, is unusual and not expected by the person to whom it happens." Id. at 31.
To the extent that the attack on Ms. Novak was an intentional act of the attacker, it can reasonably be said that it was not an "accident." But from the perspective of the deceased victim, the event of being shot in the face by a pedestrian while she drove her car was certainly a completely unexpected and unusual occurrence, producing a highly unfortunate result. Furthermore, the fact that Endicott was later legally declared to be not responsible for his actions severely undermines the conclusion that Ms. Novak's injuries were purely the result of an intentional criminal act.
Endicott was a severely disturbed man, prone to acts of violence. As such, he was a man to avoid just as surely as a motorist would want to avoid a drainage ditch or a deep washed-out hole in the road. It was Beverly Novak's unawareness of his condition and her ignorance of his propensities that caused her to fail or neglect to prudently avoid any encounter with or proximity to him. From her point of view, the completely chance occurrence of having Endicott approach her was a most unexpected and unfortunate accident indeed.
*1119 Construction of the clause "arising out of the use of a motor vehicle" is an easier matter. It is well settled that "arising out of" does not mean "proximately caused by," but has a much broader meaning. All that is required is some nexus between the motor vehicle and the injury. E.g., Government Employees Insurance Co. v. Batchelder, 421 So.2d 59 (Fla. 1st DCA 1982); Indiana Insurance Co. v. Winston, 377 So.2d 718 (Fla. 4th DCA 1979), cert. denied, 388 So.2d 1120 (Fla. 1980); Auto-Owners Insurance Co. v. Pridgen, 339 So.2d 1164 (Fla. 2d DCA 1976); National Indemnity Co. v. Corbo, 248 So.2d 238 (Fla. 3d DCA 1971). It is clear that in the present case, as the district court correctly concluded, there was a highly substantial connection between Ms. Novak's use of the motor vehicle and the event causing her fatal injury. Obtaining a ride in or possession of the motor vehicle was what motivated the deranged Endicott to approach and attack the deceased.
The clause, "arising out of the use of a motor vehicle," is framed in such general, comprehensive terms in order to express the intent to effect broad coverage. Red Ball Motor Freight, Inc. v. Employers' Mutual Liability Insurance Co., 189 F.2d 374 (5th Cir.1951). Such terms should be construed liberally because their function is to extend coverage broadly. Valdes v. Smalley, 303 So.2d 342 (Fla. 3d DCA 1974) (liability coverage held to extend to injuries caused by object thrown from car by passenger), cert. discharged sub nom., National Ben Franklin Insurance Co. v. Valdes, 341 So.2d 975 (Fla. 1976) (discharging of writ explained in opinion finding no conflict with precedents).
Accordingly, we hold that the personal injury protection benefits are applicable to the accident that occurred in this case. The district court was correct in saying, "We do not understand that the automobile must be the instrumentality of the injury nor do we believe the type of conduct which causes the injury must be foreseeably identifiable with the normal use of the vehicle." 424 So.2d at 181.
We do not believe that our holding necessarily implies disapproval of Reynolds v. Allstate Insurance Co., the case cited by the petitioner as being in conflict. We believe the facts of that case make it distinguishable from this one. The decision there turned on the plaintiff's failure to allege facts sufficient to show the nexus between the use of the car and the injuries. This determination does not deprive us of jurisdiction, however, as there are numerous other cases, some discussed in the briefs and some which we have found ourselves, that expressly and directly conflict with the decision below.
The decision of the district court of appeal is approved.
It is so ordered.
ADKINS, ALDERMAN and SHAW, JJ., concur.
McDONALD, J., dissents with an opinion in which OVERTON and EHRLICH, JJ., concur.
EHRLICH, J., dissents with an opinion in which OVERTON and McDONALD, JJ., concur.
OVERTON, J., dissents.
McDONALD, Justice, dissenting.
I cannot interpret the policy language, required by law, that PIP benefits be provided for "an accident arising out of the ... use of a motor vehicle" to cover a criminal assault occurring within the insured vehicle, regardless of the assailant's reason for committing the assault. The fact that Endicott was later acquitted because of insanity when he assaulted Novak does not justify the majority's adoption of a subjective intent standard in this case.
The intent of Beverly Novak's assailant to use the vehicle does not provide a sufficient basis for distinguishing this case from the typical assault case, where PIP coverage does not apply because no sufficient causal connection with the use of the vehicle is shown. See, e.g., Reynolds v. Allstate Insurance Co., 400 So.2d 496 (Fla. *1120 5th DCA 1981) (no PIP coverage for assault by intruder lurking in the back seat of the insured vehicle which was merely the fortuitous scene of the assault). There is no justification for placing this case with those cases finding coverage because the use of the vehicle caused or added to the injuries. See, e.g., Valdes v. Smalley, 303 So.2d 342 (Fla. 3d DCA 1974), cert. discharged, 341 So.2d 975 (Fla. 1976) (coverage found because the velocity of the vehicle added to the destructive force of an object thrown from it). The assailant's intent, whether to obtain a ride, to steal the car, to rob or kidnap an occupant, or even to commit murder, does not provide a sufficient nexus between the assault and the use of the car. Holding the subjective intent of an assailant determinative as to the "use" of a vehicle for PIP entitlement would require insurers to guess whether particular assaults and resulting injuries are covered under the PIP policy language required by law. See § 627.736(1), Fla. Stat. (1981). PIP benefits were not meant to apply in such uncertain circumstances.
OVERTON and EHRLICH, JJ., concur.
EHRLICH, Justice, dissenting.
Ms. Novak had started her automobile and was prepared to back up and drive to the bank when she was accosted and shot upon refusal to accede to the demands of Mr. Endicott to give him a ride or the use of her vehicle. I agree with the majority that Ms. Novak's being shot meets the policy definition of "accident." However, I cannot accept the further conclusion of the majority opinion that this accident arose out of the use of the automobile. Suppose Ms. Novak was accosted when she was within a foot or two of her car, with keys in hand, and shot when she refused to give her assailant her keys. Would it be contended that PIP benefits are applicable? Of course not. Then the only difference between the assumed facts and the ones at hand is the situs of the attack, and the mere fact that the attack took place when Ms. Novak was in the automobile does not result in the attack having arisen out of the ownership, maintenance or use of the automobile. See Reynolds v. Allstate Insurance Co., 400 So.2d 496 (Fla. 5th DCA 1981).
Whether Ms. Novak was standing outside of the car or was seated in the car when shot makes no difference. The use of the car was not involved in the act of violence and that is the dispositive element in order to bring into play one's entitlement to PIP under the policy of insurance.
I dissent.
OVERTON and McDONALD, JJ., concur.